```
                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JOSEPH RIAD                       :    CIVIL ACTION
                                  :
          v.                      :
                                  :
UNITED STATES OF AMERICA          :    NO. 11-7777
```

<u>MEMORANDUM</u>

McLaughlin, J.                                      March 22, 2012

      The plaintiff seeks fifteen billion dollars in damages in connection with Federal Reserve bonds he alleges were wrongfully detained by a federal agent in 2009.  After his administrative claim to recover the bonds was denied, the plaintiff sought assistance from members of the United States Congress, but ultimately filed the instant suit seeking, among other relief, damages under the Federal Tort Claims Act ("FTCA").  The defendant has moved to dismiss the plaintiff's suit as time-barred.  The Court will grant the defendant's motion.

      The plaintiff filed this action on December 22, 2011, alleging that he had produced fifteen $1 billion 1934 Federal Reserve Bonds to an agent with U.S. Immigration and Customs Enforcement ("ICE"), a division of the Department of Homeland Security ("DHS"), who promised to determine the authenticity of the bonds and then return them.  Riad alleges that the ICE agent, after informing him that the bonds were not authentic, refused to return them.  He brings claims for trespass to chattel (Count I), conversion (Count II), and intentional misrepresentation (Count

III) under the FTCA, seeking $15 billion in damages and a declaratory judgment that the bonds are authentic.  The defendant then filed the instant motion.

I.   Background

The plaintiff possesses three bronze boxes, each containing 250 Federal Reserve Bonds from 1934 with a face value of $1 billion each.  He retained experts whose reports suggested the probable authenticity of the bonds and the likelihood of successfully "repatriating" those bonds by offering them to the federal government for redemption at face value or a reward for returning them.  Satisfied with the legitimacy of his claim, the plaintiff began a process by which he sought to repatriate the bonds, and initially provided the U.S. Secret Service with samples of the bonds in order to review his claim.  Compl. ¶¶ 9, 11-14, 16-18, 29.

The Secret Service returned the bonds to the plaintiff and referred him to an official at the Bureau of the Public Debt, who "categorically denied the existence of bonds such as" the ones in the plaintiff's possession, and informed the plaintiff that neither the Bureau of the Public Debt nor the Secret Service had authority to redeem the plaintiff's bonds.  At that point he began to contact members of Congress for help in repatriating the bonds, including former Senators Arlen Specter and Rick Santorum and Representative Joe Pitts.  Id. ¶¶ 20-25.

The plaintiff was informed by a financial consultant he had retained that Nickolaus Jones, an agent with ICE in Irvine, California, could assist him in repatriating the bonds.[1]  Riad sent Agent Jones photos of the bonds and reports prepared by his experts, and Jones requested that the plaintiff provide him with a sampling of the bonds so that he could physically inspect them.  At a meeting on March 11, 2009, the plaintiff provided Agent Jones with a sampling of five bonds each from the three boxes in his possession.  Agent Jones promised to investigate the authenticity of the bonds and return them.  Id. ¶¶ 26-34, 38, 39.

Agent Jones contacted the plaintiff one week later and informed him that he had concluded that the sample bonds were not authentic.  The plaintiff requested that the samples be returned to him, but Agent Jones refused to do so.  Riad requested an explanation for Agent Jones's conclusion as to the bonds' authenticity, but did not receive one.  Agent Jones informed the plaintiff that he had destroyed the bonds, although the plaintiff believes that Agent Jones still has them or has given them to a

---

[1] The plaintiff avers that his consultant, Neil Gibson, substantiated his expertise in bond repatriation by providing the plaintiff with correspondence from Robert Davis, whom Gibson claimed was an official with the Federal Reserve Bank of San Francisco and responsible for its repatriation program.  The plaintiff asserts that this letter was fraudulent, that no individual named Robert Davis ever worked for the San Francisco Fed, and that the Davis correspondence was part of Agent Jones's overall scheme to dispossess the plaintiff of his property. Compl. ¶¶ 26, 37.

third party.  Id. ¶¶ 41-44, 47.

The plaintiff filed an administrative claim with ICE and the Department of Justice to recover the bonds on June 8, 2010.  Id. Ex. A.  On April 1, 2011, ICE sent notice by certified mail to the plaintiff and his counsel, informing them that the administrative claim had been denied.  Decl. of Geoffrey M. Harriman, Def.'s Mot. Ex. 1 & 1.A-1.F 9.[2]  The plaintiff did not seek reconsideration of that denial.  The plaintiff then filed the instant suit on December 22, 2011.

## II. Discussion

The defendant argues that the plaintiff's suit is time-barred under the FTCA because he did not file suit within six months of the date of mailing the notice of denial of his administrative claim.  The plaintiff argues that in spite of his having missed the deadline for filing suit, he is entitled to equitable tolling to permit his claim to go forward.  The Court concludes that the plaintiff's failure to comply with the statute of limitations did not occur under the extraordinary circumstances that give rise to a right to equitable tolling.  As

---

[2] Including these documents with the defendant's motion does not convert it into one for summary judgment because it is indisputably authentic and integral to the complaint, as the denial of the plaintiff's administrative claim is required for the Court to exercise jurisdiction under the FTCA. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); 28 U.S.C. § 2675(a).

a result, the Court will dismiss the plaintiff's claims.

### A.  Statute of Limitations

The plaintiff concedes that he did not timely file suit.  The FTCA includes an administrative exhaustion requirement providing that no action may be brought against the United States unless the claimant "first presented the claim to the appropriate federal agency and his claim . . . [has been] finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a); see also McNeil v. United States, 508 U.S. 106, 112 n.7 (noting that the addition of this requirement to the FTCA in 1966 was made with the purpose of encouraging quick settlement of meritorious claims).  Upon receiving notice of final denial of the claim (or denial of a request for reconsideration) a plaintiff must bring suit within six months or the claim is "forever barred" as against the United States.  28 U.S.C. § 2401(b).

The parties do not dispute that the plaintiff brought an administrative claim against ICE after Agent Jones refused to return the bonds, that ICE was the appropriate agency with which to raise that claim, or that the plaintiff did not request reconsideration of that claim.  The deadline for the filing of suit in federal district court under 28 U.S.C. § 2401(b) was thus October 1, 2011.  The plaintiff does not dispute that he filed the instant suit after that date.  See Pl. Opp. 7-8; Harriman

Decl. Ex. 1. Under the FTCA's statute of limitations, his suit is "forever barred."

    B.    <u>Equitable Tolling</u>

The plaintiff argues that he is entitled to have the limitations period equitably tolled because his delay in filing suit was on account of his pursuit of alternative resolutions to his claims via the legislature. The invocation of equitable tolling under these facts is inappropriate.

The plaintiff argues that his failure to file suit within the limitations period is attributable to his pursuit of "as many non-litigious avenues of resolution as possible and . . . patien[ce] in waiting for those potential resolutions to come to fruition . . . ." Pl. Opp. 7-8. He avers that in March 2011, he retained a lobbying firm to contact federal legislators in an attempt to pass a private bill confirming the authenticity of his bonds and allocating a finder's fee for the plaintiff. The lobbying firm contacted staff members of various members of the House and Senate between April and August 2011. He argues that because Congress did not begin its fall session until October 4, 2011, he reasonably waited for a response from the legislators into the fall, and therefore missed his filing deadline. <u>Id.</u> at 12-13. He argues that these efforts, and the fact that the government was on notice of his claims since at least the time of his filing of an administrative claim, entitle

him to equitable tolling.  Pl. Opp. 13-14.  They do not.

The United States Court of Appeals for the Third Circuit has held that equitable tolling may be applied to FTCA claims, at least in the limited context of medical malpractice.  See Santos ex rel. Beato v. United States, 559 F.3d 189, 194-96 (3d Cir. 2008) (concluding that Congress did not intend to preclude the doctrine's application as with other waivers of sovereign immunity).  But see Marley v. United States, 567 F.3d 1030, 1035 (9th Cir. 2009) (en banc) (holding that the six-month time bar in Section 2401(b) is jurisdictional and may not be tolled).

Equitable tolling of claims is appropriate where "a plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstances."  These circumstances include "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum."  Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005) (internal citations omitted).

None of these circumstances is present here.  The plaintiff appears to have made a conscious choice to pursue resolution of his claims through the legislature, and the

government did not mislead him as to his cause of action or prevent him from asserting his rights. Indeed, the claim-denial letter from ICE explicitly states that he "may file suit in an appropriate United States District court <u>not later than six months after the date of mailing of this notification of denial.</u>" Harriman Decl. Exs. A, B, C (citing 28 U.S.C. § 2401(b)) (emphasis added). The plaintiff's own decisions as to how to pursue his claims were the cause of his failure to file a timely complaint. None of the facts the plaintiff alleges entitle him to tolling of the limitations period, which is "extraordinary" and to be used "only sparingly." <u>Santos</u>, 559 F.3d at 197.

The plaintiff's argument regarding his entitlement to equitable tolling under the circumstances is detailed and extensive in explaining the reasons why he filed suit outside the limitations period. Because the plaintiff's failure to comply with the statute of limitations is undisputed, and because the plaintiff has argued the factual basis for relief from that failure at length, granting the plaintiff leave to amend the complaint would be futile. <u>See</u> <u>Philips v. County of Allegheny</u>, 515 F.3d 224, 245 (3d Cir. 2008). The Court will dismiss the complaint with prejudice.

An appropriate order shall issue.